Thank you your honor and good morning to the members of the panel. My name is Jim O'Brien. I'm representing Gregory Mergenthaler and in order to assist, my focus is going to be on the time period between 2009 and 2011. I'm going to be asking for two minutes in rebuttal. Briefly, Mr. Mergenthaler was born in 1965 and he was 44 years old on the date that he alleged that disability began. He completed the 12th grade and he has passed work as a custodian and as a salesperson. Mr. Mergenthaler described a car accident in 2006 where he may have even lost consciousness. When he got on the other side of that crash, he not only had some physical anomalies happening to him, but he had principally mental disorders that attended him and have been a part of his life since then. While there are other issues that the court may want to inquire about, I intend on focusing on two issues. One is the treatment that the ALJ gave or the short shrift the ALJ gave to Mr. Mergenthaler's treating physicians. We think there has been a lack of specific and legitimate rationale within the context of that opinion. The second issue that we intend on addressing for the court is the adverse credibility determination that the ALJ entered against Mr. Mergenthaler. Mr. Mergenthaler has three to four treaters in his case over the course of this time frame. He had Dr. Hergenthaler, a clinical psychologist, Dr. Willoughby, a psychiatrist, Dr. Cobb, a clinical psychologist, and Gregory Shanks, a licensed clinical social worker with a master's degree. It's in the treatment of Mr. Her... of these treating physicians that we take issue knowing that the rule... In all fairness, Mr. Shanks is not a treating physician, is he? No, he is not. He is a treating... he's a member of the treatment team and we think that he provides some pertinent information, especially considering since in the decision the discount the mental struggles that Mr. Mergenthaler was having. We ask... He's nothing more than an other source of medical information. That... that is open. As we said in the brief, Your Honor, there is a vacillation at the Ninth Circuit. There is some consideration that individuals who are supervised by Let's just assume that he's another source. Okay, that... that's fine. So with regard to Dr. Hergenthaler, one of the things that we find and it's in the record at 327 and 328 is her description of his mental disorders and one of the the ALJ went from her description of the mental disorders to saying this is only limited to his role as a custodian and if one actually reviews what she said there, the qualifications or the limitations he suffered have nothing to do with his role as a custodian. She's told us that it's... his disabilities are closely linked to PTS symptoms, fears, anxiety about pain, sudden death, episodic and attended excruciating pain, and that he's constantly on pins and needles. That has nothing to do with a limitation associated with his past relevant work history as a custodian and we think that the absence of specific and his daily life has to be in that decision. It was not in that decision and for that reason... But isn't she, you know, one way the IJ, the ALJ could read this is that these conditions preclude him from all work as a custodian. Well and that's sort of the the point that I'm trying to make. You'll find... I understand but that's the way the ALJ read it. But I think he's improperly focused on limiting the extent of her opinion. She had available to her the report of the University of Montana. He didn't completely discredit Dr. Hergenthaler, did he? No, he did not and he really couldn't because of her opinion and the basis for her opinion. So he had to give it some weight. That is true and what she had available, your honor, was set forth in the record at pages 384 through 389, which was a very detailed discussion that was presented to Mr. Hergenthaler about his limitations in the work environment. Could I just have you focus for a minute on Councilor Schenck's? Yes, certainly. So the ALJ basically said that his, I guess it was his opinion that in in 2018 or 16 that looked back to the relevant time period and he said his was undermined by his treatment notes, which are quite extensive. Yes. Even up through the relevant time period. Yes, he did. That was the observation. But why was it, you know, you read that I read off the kind of treatment notes go on forever and I read them and you know it shows that he there was that the meditation and counseling that he was learning from Schenck's was at times proved helpful and other times it didn't make a difference and you know. We are not here to deny that there was some improvement with aggressive treatment. There was. But even as late as the hearing, you'll find in the transcript that twice a month Mr. Hergenthaler considers suicide and that's when he's at a really good point. Yes, but we're looking at the time period from what was it? 09, September 09 to September 10, 2011. 2011. Yes. Right, we're looking at limited time period. So yes, it doesn't really make too much difference for our purposes what his condition was like at the time of the hearing. We have to look back. I understand that, but my point is, Your Honor, that despite improvement, he still struggles with these daily problems associated with suicidal ideation and fears and anxieties. Well, the only thing in the relevant time period in Schenck's notes that suggest he was suffering from suicidal ideation. Well, I don't think you can read Mr. Schenck's notes in isolation. You'll notice that Mr. Schenck's notes were also countersigned by Dr. Hergenthaler. Yes. Or Hergen, rather. And so it's sort of unfair to exclude or arbitrarily exclude without having the ALJ make those Okay, well, his notes don't match up, but we have a counter note with Dr. Hergenthaler, and she is clearer about his disability, Mr. Hergenthaler's ongoing impairments. But what do you think the major flaw is with what happened below? There is no specific detailed region either for discounting the treating providers or for discounting the adverse credibility determination. So break that down. For example, in the adverse credibility determination, you will find there are four paragraphs that the ALJ related to the adverse credibility. At this, you'll find it 1232 and 1233, four paragraphs none of which takes the information that is provided in testimony and explains how that testimony is inconsistent with some other finding in the record. I believe the circuit has relied heavily on the idea that there is a requirement that it not be asked to state a identify the specific and legitimate reasons for discounting adverse credibility. And those four paragraphs, none of them, none of those paragraphs explain the relationship between the adverse credibility finding and some aspect of Mr. Mergenthaler's testimony. I think that's a requirement. That's the position we are in. I've already taken up my time, Your Honors. Okay, thank you. I'll give you a minute for rebuttal. Let's hear from the government. May it please the court. Jordan Goddard appearing on behalf of the Commissioner of Social Security. Good morning, Your Honors. Mr. Mergenthaler certainly did have issues at the beginning of the alleged period of disability from PTSD and mild depression following a car accident several years earlier. And while Dr. Kergenrather did give the opinion in September 2009 that she believed Mr. Mergenthaler would be disabled for the following year, the AOJ reasonably found that the treatment notes didn't actually support that prognostication. And in particular, Mr. Shank's treatment notes are very, very informative here. They show that while Mr. Mergenthaler did have anger issues, particularly early on, once he engaged in treatment, taking both medication and getting involved in regular counseling, he improved significantly. And the AOJ was reasonable in making this finding. That finding is supported by the opinion of Dr. Enright, a psychologist who testified at one of the hearings and gave the opinion that the treatment record showed improvement and did not show disabling limitations. There are a number of examples that Dr., excuse me, Mr. Shank's identifies throughout his treatment record of improvement, not long after Mr. Mergenthaler began serious treatment. For instance, in March 2010, which is less than a year after the alleged... What about the main point of opposing counsel that the judge below just simply didn't point out a reasonable basis to make credibility or discount type determinations? That is simply incorrect, Your Honor. The AOJ gave several clear reasons for discounting Mr. Mergenthaler's credibility. However, before I jump into the specifics, I would like to point out that we do have two periods at issue, or excuse me, not at issue here, but that we're at issue at the hearing. And as Mr. O'Brien indicated, a lot of that hearing testimony reflected Mr. Mergenthaler's condition at the time of the hearing, which was much later. And so much of that testimony was actually about his later condition. And the AOJ found Mr. Mergenthaler to be disabled beginning in 2016, based on Mr. Enright's opinion that there was a decompensation around 2012 when Mr. Mergenthaler went through a divorce. So just sort of as an initial note, I want to point out that a lot of this testimony actually doesn't involve the relevant period that we're talking about here today. It's the later period. But with respect to the specifics, the AOJ noted that, for instance, there were inconsistencies in Mr. Mergenthaler's testimony. Kevin, this is Judge Pius. Could I back you up to Dr. Hergenrather for just a moment? Of course. You started off by saying that the AOJ noted that her opinion regarding the connection with the university's inquiry to her was not supported by the treatment notes, and you focused on Schenck's notes. But Dr. Hergenrather had her own treatment notes as well. And if you look at her treatment notes during the relevant time period, they document pretty clearly what his troubles were. Well, Doctor, it's important to keep in mind that Dr. Hergenrather, my apologies, mispronouncing that name, Dr. Hergenrather did not stick around through the whole period. She actually moved her practice. I believe it was before the one year period had expired from May 7th, 2009, the one year later. I'm sorry, I don't have the exact date in front of me, but she did not continue on as primary care provider. Mr. Schenck, who was originally working under her supervision, took over the treatment without Dr. Hergenrather. And in fact, I would concede that when we look at those early treatment notes, right when he begins serious treatment, they do reflect some serious issues. But we have to keep in mind that there's a 12 continuous month requirement here. And so we need to look to the treatment notes that are towards the end of that one year period to determine how much he has improved, because the ALJ's rationale focuses on the improvement in that one year period, not just the ALJ doesn't find that there was never an issue to begin with. And so when we're looking at Dr. Hergenrather's notes, we have to keep in mind that it's very, very early in the and doesn't really reflect what the ALJ's rationale is, which is improvement over time. And by the time we get to March 2010, Mr. Mergenthaler is reporting that he's he's able to focus through three hours of a church session, that he can stand in line at a grocery store with people behind him. And while it makes him nervous, he's able to do it. So let me have one last question with regard to Schenck's, which is, you know, he has a rather lengthy opinion. It's difficult to read. I think it was in 2015. And he reflects back on his treatment notes and he documents that he summarizes the treatment notes and whatnot and makes reference to them. But he nonetheless concludes that during that period of time that Mergenthaler was, you know, was not able to work. What do we do with the fact that he's evaluating or he's summarizing his own treatment notes and nonetheless reaches a conclusion that he was not able to work? Well, Judge Prager-Singh, quite frankly. Oh, I'm sorry, Judge Paez, my apologies. That's OK, I should have identified you. This is a common occurrence that we see in Social Security cases where a medical source will give an opinion and assert their own treatment record, support it. But that's not the end of the story. If the ALJ interprets those treatment records differently, the law says that the ALJ's interpretation is entitled to deference as long as it's a rational one. And that is a very deferential standard. And in this case, we have to keep in mind that the ALJ's interpretation of those treatment records is effectively supported by Dr. Enright, the medical expert who testified at one of the hearings, who reached very, very similar conclusions. And so this is the not unusual situation of a treatment provider providing an opinion for the purposes of disability, saying this person can't work and my treatment notes differently. And it's a it's a rational interpretation. And when you have these competing interpretations, so long as the ALJ's interpretation clears that low hurdle of being rational, it's the ALJ's interpretation of those notes that's entitled to deference. And Shanks, as a other medical source, isn't entitled to any sort of deference or heightened standard when it comes to considering his opinion. So as long as the ALJ was rational in finding, no, these treatment notes say something very different, then the ALJ's finding must be upheld over Mr. Shank's opinion. And there are a number of examples. If you look at the treatment routes that are really central to this time period, not the later ones, because, again, the government can see that. But let me ask you, let me ask you, did the ALJ give specific germane reasons for discounting Shanks' opinions other than just the conclusory opinions? Did he say why? Because because of Shanks' inconsistent because the inconsistency with his own opinion, did he say why? I'm not following your question, Your Honor. Are you are you asking? Did the ALJ provide specific reasons for discounting Greg Shanks' opinion and conclusion as set forth in Excerpt of Record 1116, tab 45? Yes, Your Honor. If we look at so, ALJ does find that Mr. Shank's opinion is not consistent with his own treatment notes. If we go to 1132, did he say why? Just saying something is inconsistent doesn't work. Yes, Your Honor. At 1132, last paragraph, we have the ALJ's summary of Mr. Shank's treatment notes. It goes on, it's technically only one paragraph, but it's an extremely long paragraph. And he summarizes those treatment notes in some detail. I don't think I'm going out on a limb to say that the court can reasonably infer from that when you have a very, very long paragraph that probably should have been three or four paragraphs that summarizes those treatment notes and points out along the way where these inconsistencies are, where he's mentioning improvement, the ability to engage in greater activities. And then the ALJ points back to that and says, not consistent. It doesn't take a lot to connect those two things. And so absolutely, at the bottom of 1132 and on to 1133, we have the ALJ's summary of Mr. Shank's treatment notes. And it's pretty plain, you can plainly see why the ALJ is finding these to be inconsistent. Counsel, what is the obligation of the ALJ when considering the opinions of other source providers? What's the obligation of the ALJ in considering that type of evidence? Well, the ALJ has to consider that much in the same way that the ALJ would consider any other evidence. Does it have to give any particular weight to that evidence? If the ALJ identifies reasons for not giving weight, then the ALJ does not. However, in a situation like Mr. Shank's, if you have someone with a treatment relationship like this, then the ALJ is obligated to say something, though the standards set by this court are very low. This court has said that the ALJ need only supply reasons germane to the witness. And of course, the substantial evidence standard is the standard of review. As the Supreme Court has recently reminded us in cases like BSTEC, it is a very, very low and deferential standard. Okay. Thank you, counsel. I believe counsel for the appellant has a, we'll give you a minute for rebuttal. Thank you, Your Honor. I would like to emphasize that I think the position that is being proffered by the government today is that a treater, an acceptable source, or an other source are not able to provide their own interpretation based on their experience and the records they made as a basis that can be ignored because it's not clearly set forth in those records themselves. It is our position that that's inaccurate. It's almost a borders on foolishness because we all take notes in our professions as do these other sources and medical doctors. And those are triggers to remind us of the experiences we've had with the people that we serve. And so I think that without the ALJ outlining specific and legitimate reasons why a treater such as Shanks or a treater such as Dr. Willoughby can't go back over their notes and provide a more sophisticated, robust opinion is not a proper treatment of this. These are not individuals who are designed to conform to the specific demands of an ALJ for what is in fact in their records. They are not Social Security employees. They are mere medical providers. And so to hold them to a standard that they should be aware of the specifics of regulations would be inappropriate. Okay. Thank you, counsel. I appreciate it. We appreciate the arguments on both sides and the matter is submitted at this time. Thank you, your honor. Thank you.
judges: Paez, Rawlinson, Pregerson